CATHOLIC SOCIAL SERVICES, INC.; American Federation of Labor—Congress of Industrial Organizations; United Farm Workers of America, AFL–CIO; Miguel Moran; Kamiel Abubakr; Maria Magana; Elias Velasquez; Maria Velasquez; Francisco Arizaga, Plaintiffs–Appellees,

v.

Janet RENO, Attorney General; Doris Meissner, Commissioner of Immigration and Naturalization Service, Defendants–Appellants.

No. 96–15495.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1997.

Decided April 30, 1997.

As Amended on Denial of Rehearing
En Banc Jan. 16, 1998.

Stephen W. Funk, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for defendants-appellants.

Peter A. Schey, Center for Human Rights and Constitutional Law, Los Angeles, California, for plaintiffs-appellees.

Before: SCHROEDER, ALARCON, and O'SCANNLAIN, Circuit Judges.

PER CURIAM Opinion; Dissent by Judge SCHROEDER.

### PER CURIAM.

This class action litigation challenges the lawfulness of an Immigration and Naturalization Service ("INS") policy adopted in 1986 and revised in 1987 as part of the INS's administration of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1255a ("IRCA"). That statute established a legalization program under which certain aliens unlawfully present in the United States could apply for status as temporary residents, and then seek permission to reside permanently in the United States. *See* 8 U.S.C. §§ 1255a(a), (b). Among other requirements, IRCA provided that to be eligible, applicants had to prove continuous physical presence in the United States since November 6, 1986. 8 U.S.C. § 1255a(a)(3)(A). The policy plaintiffs seek to challenge in this case is an INS directive interpreting the continuous physical presence requirement of § 1255a(a)(3)(A) to mean that in order to qualify for adjustment of status, aliens must have obtained INS approval before leaving the United States for even the briefest of absences (the "advance parole policy").

Plaintiffs include a number of concerned organizations and individuals (collectively "Catholic Social Services"). They filed their original complaint in the district court in November of 1986 challenging the advance parole policy. They contended that the policy violated the statutory proviso that an alien would not fail to maintain continuous physical presence by virtue of brief, casual and innocent absences from the United States. *See* 8 U.S.C. § 1255a(3)(B). The district court certified a broad class of all persons who had not complied with the INS advance parole policy but were otherwise eligible for adjustment of status under 8 U.S.C. § 1250a, and extended the application deadline for class members. The district court subsequently ruled that the advance parole policy was contrary to the intent of the statute and hence unenforceable. *Catholic Social Ser-*

*vices, Inc. v. Meese,* 685 F.Supp. 1149, 1159–60 (E.D.Cal.1988).

The case is now before this court for the third time. In the first appeal from the district court's original ruling, we affirmed the district court in a consolidated appeal that also dealt with a related case challenging another INS policy. *Catholic Social Services, Inc. v. Thornburgh,* 956 F.2d 914 (9th Cir.1992). The Supreme Court granted certiorari and vacated our decision, holding that only those persons who had taken affirmative steps toward legalization and had their path blocked by INS representatives on account of the policy had ripe claims. *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 58–59, 113 S.Ct. 2485, 2496, 125 L.Ed.2d 38 (1993). The Court held that "the front-desking of a particular class member is not only sufficient to make his legal claims ripe, but necessary to do so." *Id.* at 66, 113 S.Ct. at 2500. The Court concluded that it could not resolve the jurisdictional question regarding ripeness because the record did not contain evidence that particular class members were actually subjected to front-desking. *Id.* at 64–65, 113 S.Ct. at 2499–500. The Court explained the basis for its disposition as follows: "Because only those class members (if any) who were front-desked have ripe claims over which the District Courts should exercise jurisdiction, we must vacate the judgment of the Court of Appeals, and remand with direction to remand to the respective District Courts for proceedings and determine which class members were front-desked." *Id.* at 66–67, 113 S.Ct. at 2500. In compliance with the Court's mandate, we remanded to the district court for further proceedings consistent with the Supreme Court's opinion. *Catholic Social Services, Inc. v. Reno,* 996 F.2d 221, 222 (9th Cir. 1993). The district court then entered the orders presently before us, certifying a modified and narrower class, and continuing its prior orders providing interim relief for the class. The Government filed a timely appeal from the district court's orders.

During the pendency of this appeal, Congress again amended the immigration laws by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Section 377 of the new Act purported to set limits on judicial review of legalization claims.

We therefore must consider the effect of this intervening legislation, which the Government contends requires us to vacate the district court's orders and to direct the district court to dismiss the litigation. We conclude we must do so.

The background of the case and its procedural history are set forth in detail in this court's prior opinion, *Thornburgh,* 956 F.2d at 916–18, and in the Supreme Court's opinion. *Reno,* 509 U.S. at 46–53, 113 S.Ct. at 2489–93. We do not elaborate further here. The Supreme Court's decision is the springboard for our legal analysis in this appeal.

In that decision, the Court rejected the argument of the INS "that § 1255a(f)(1) precludes district court jurisdiction over an action challenging the legality of a regulation [regarding an application for legalization] without referring to or relying on the denial of any individual application." *Id.* at 56, 113 S.Ct. at 2495. The Court held that 28 U.S.C. § 1331 confers "a statutory source of jurisdiction" for class actions to review agency actions. *Id.*

The Court noted that since Catholic Social Services sought injunctive and declaratory judgment remedies, "courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Id.* at 57, 113 S.Ct. at 2495 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)).

In *Reno,* the Court described at some length the INS's practice, known as "front-desking," pursuant to which legalization assistants were instructed to review applications in the applicants' presence and to reject the applications of any aliens who were statutorily ineligible for legalization. Under this "front-desking" policy, aliens who disclosed unapproved trips outside the United States had their applications rejected before the applications could be filed. *Id.* at 61–62, 113 S.Ct. at 2497–98.

In addition to those persons who had actually attempted to apply for legalization and had their applications rejected at the front desk, in a footnote, the Supreme Court opinion referred to the possibility that there may have been other persons who had been sufficiently affected by the policy to maintain a justiciable claim, even though they had not actually been "front-desked." *Id.* at 66 n. 28, 113 S.Ct. at 2500 n. 28.[1] Because the Court could not determine from the record before it whether the district court may have exercised its discretionary jurisdiction to review the action of the INS without first considering whether any of the named plaintiffs or class members had been front-desked, the Court remanded with directions that the district ascertain, in the first instance, whether any class members had been front-desked and therefore had ripe claims for its discretionary review. *Id.* at 66–67, 113 S.Ct. at 2500–01.

On remand, the district court modified the class definition so as to include persons who had actually been front-desked and those who came within the purview of the Court's dicta in footnote 28 by being otherwise adversely affected by the front-desking policy.

It was against this background that Congress passed section 377, with a retroactive date as if it had been enacted as part of IRCA. Section 377 provides:

(a) LIMITATION ON COURT JURISDICTION.-Section 245A(f)(4) (8 U.S.C. § 1255a(f)(4)) is amended by adding at the end the following new subparagraph:

"(C) JURISDICTION OF COURTS.

Notwithstanding any other provision of law, no court shall have jurisdiction of any cause of action or claim by or on behalf of any person asserting an interest under this section unless such person in fact filed an application under this section within the period specified by subsection (a)(1) of this section, or attempted to file a complete application and application fee with an authorized legalization officer of the Service but had the application and fee refused by that Officer."

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall be effective as if included in the enactment of the Immigration Reform and Control Act of 1986.

■ The government maintains that the new statute requires dismissal of this action because there has been no showing that any of the class members or named plaintiffs meet the requirements of § 377, i.e., by having actually filed an application or by having attempted to tender an application and fee but having them refused by a legalization assistant,[2] within the times originally established by the statute. Catholic Social Services counters that the statute was not intended to apply to this case, and that if it was, the statute is unconstitutional as a violation of separation of powers and due process. We discuss each issue in turn.

## APPLICABILITY OF THE STATUTE

■ Catholic Social Services contend that § 377 does not apply to this litigation. They argue that it applies only to aliens who come within the statute it amends, 8 U.S.C. § 1255a(f). Section 1255a(f) provides for a single level of administrative appellate review of determinations regarding an adjustment of status, and limits judicial review of denials of legalization to the administrative record.[3]

1. Footnote 28 states as follows:
   The record reveals relatively little about the application of the front-desking policy and surrounding circumstances. Although we think it unlikely, we cannot rule out the possibility that further facts would allow class members who were not front-desked to demonstrate that the front-desking policy was nevertheless a substantial cause of their failure to apply, so that they can be said to have had the "advanced parole" or "facially valid document" regulation applied to them in a sufficiently concrete manner to satisfy ripeness concerns.
   *Reno,* 509 U.S. 43, 66 n. 28, 113 S.Ct. 2485, 2500 n. 28, 125 L.Ed.2d 38.

2. We agree with the INS that the statute's requirement that a complete application form must be presented to a "legalization officer" should be broadly construed to mean presentation to anyone authorized by the INS and IRCA to receive such form.

3. 8 U.S.C. § 1255a(f) reads:
   There shall be no administrative or judicial review of a determination respecting an application for adjustment of status under this section except in accordance with this subsection.
   . . .
   No denial of adjustment of status under this section based on a late filing of an application

Catholic Social Services maintains that § 1255a(f) applies to aliens who have had applications denied. They assert that it is inapplicable to the class members because they were never able to have their applications filed and accordingly could not have had them denied. Catholic Social Services rely on *McNary v. Haitian Refugee Center*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) to support this proposition. In *McNary*, the Court dealt with a related provision of IRCA that included limitations on review similar to those in 8 U.S.C. § 1255a(f) before the 1996 amendment. In *McNary*, the Supreme Court held that such a statute was a limitation only on a district court's review of individual denials of status and did not deprive the district courts of the jurisdiction to consider class actions seeking an injunction or a declaratory judgment based on an allegation of a deprivation of due process resulting from the manner in which the INS administered the relevant provisions. *Id.* at 491–94, 111 S.Ct. at 895–97. The Supreme Court's holding in *McNary*, however, focused on legislative intent, and on the absence of any indication in the statute or its history that Congress intended to preclude such general constitutional attacks. *Id.* at 494, 498–99, 111 S.Ct. at 897, 899. In the absence of any such indication, the Supreme Court relied on the general presumption in favor of judicial review. *Id.* at 498–99, 111 S.Ct. at 899 ("The strong presumption in favor of judicial review of administrative action is not overcome either by the language or the purpose of the relevant provisions of the Reform Act."). Section 1255a(f) as amended in 1996 is distinguishable from the statute considered in *McNary*.

Section 377 contains an express congressional directive that federal court jurisdiction should be limited to a review of administrative claims of persons who have tendered or attempted to tender a complete application and fee. Accordingly, the language of the statute rebuts the presumption of administrative review of agency action. Were there any doubt of Congress's intent, it is resolved by the language of the conference report:

> [Section 377] amends INA section 245A to put an end to litigation seeking to extend the amnesty provisions of the Immigration Reform and Control Act of 1986, and to limit claims under that section to aliens who in fact filed an application for legalization under that section within the prescribed time limits, or attempted to do so but their application was refused by an immigration officer.

H.R. Conf. Rep. No. 104–828, at 230 (1996).

It is also clear from the language of § 377 and the conference report that Congress intended to eliminate federal court jurisdiction over claims by aliens who were not actually subjected to front-desking but failed to file an application because of the front-desking policy. Section 377 expressly provides that federal court jurisdiction only extends to claims by those who "attempted to file a complete application and application fee with an authorized legalization officer ... but had the application and fee refused by that Officer." While the phrase "attempted to file a complete application" might be ambiguous standing alone, any uncertainty disappears when these words are read in context. In order for a legalization officer to have re-

---

for such adjustment may be reviewed by a court of the United States or of any State or reviewed in any administrative proceeding of the United States Government.
. . .
The Attorney General shall establish an appellate authority to provide for a single level of administrative appellate review of a determination described [above].
. . .
Such administrative appellate review shall be based solely upon the administrative record established at the time of the determination on the application and upon such additional or newly discovered evidence as may not have been available at the time of the determination.

. . .
There shall be judicial review of such a denial only in the judicial review of an order of deportation under section 1105a of this title.
. . .
Such judicial review shall be based solely upon the administrative record established at the time of the review by the appellate authority and the findings of fact and determinations contained in such record shall be conclusive unless the applicant can establish abuse of discretion or that the findings are directly contrary to clear and convincing facts contained in the record considered as a whole.
8 U.S.C. § 1255a(f)(1)–(4).

fused a complete application, a complete application must have been tendered. Clearly, someone who was discouraged from filling out an application or whose request for an application was denied would not fall within the purview of § 377.

■ A broader interpretation of § 377 would contravene Congress's clearly expressed intention to "put an end to [this] litigation." An expansive reading of § 377 would foster litigation to define the parameters of an attempt to file a complete application. Moreover, because this is a matter pertaining to alien rights, this court must "rigidly . . . enforce the legislative will." *INS v. Pangilinan*, 486 U.S. 875, 884, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (quoting *United States v. Ginsberg*, 243 U.S. 472, 474, 37 S.Ct. 422, 425, 61 L.Ed. 853 (1917) (internal quotation marks omitted)).

We are persuaded that § 377 solely applies to the claims of class members who actually tendered or attempted to tender a complete application and fee.

## CONSTITUTIONALITY OF SECTION 377

### A. Separation of Powers

■ Catholic Social Services alternatively argue that if Congress did intend the section to apply to claims like theirs, then Congress has violated the principle of separation of powers. They maintain that Congress has reached beyond its legislative function to intrude in the judicial process by dictating the result in this case. They rely on *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871).

In *Klein*, the Supreme Court held that a statute was unconstitutional because it ordered federal courts to deny the effect of presidential pardons in certain cases where the Court had already determined their effect. 80 U.S. (13 Wall.) at 145. The Court determined that by doing so, Congress had "prescribe[d] a rule for the decision of a cause in a particular way," and had not created any new circumstances by enacting the legislation other than to prescribe such a rule. *Id.* 80 U.S. (13 Wall.) at 146–47. Catholic Social Services thus contend[s] that here,

Congress acted improperly in enacting legislation intended to require the courts to dismiss their claims.

Catholic Social Services' theory is similar to that advanced and rejected in *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). The Court there held that a statute affecting pending cases, indeed designating them by name and number, did not offend separation of powers because Congress was changing the law applicable to those cases rather than impermissibly interfering with the judicial process. *Id.* at 438–40, 112 S.Ct. at 1413–14; *see also Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1569–70 (9th Cir.1993) (noting high degree of judicial tolerance for Congressional act that is intended to affect litigation as long as Congress changes underlying substantive law in any detectable way).

Catholic Social Services' argument concerning congressional intervention in a particular case is even less compelling than that presented in *Robertson*. Here, Congress has expressly limited federal court jurisdiction to review claims of aliens seeking benefits under a statute. Congress's authority to define federal court jurisdiction is well-recognized. *See Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993); *Palmore v. United States*, 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973); *Duldulao v. INS*, 90 F.3d 396, 400 (9th Cir.1996). Its plenary authority with respect to immigration matters is also ingrained in our law. *See Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (" '[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens.") (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909)); *see also Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 532–33, 96 L.Ed. 547 (1952); *Duldulao*, 90 F.3d at 399–400. Accordingly, the statute does not violate the separation of powers. *See Keene Corp.*, 508 U.S. at 207, 113 S.Ct. at 2040; *Fiallo*, 430 U.S. at 792, 97 S.Ct. at 1477–78; *Gray*, 989 F.2d at 1568–70.

### B. Due Process

█ Catholic Social Services contend that § 377 is unconstitutional because it deprives them of a federal court forum to vindicate a deprivation of a property interest conferred upon them by IRCA. We disagree. Simply labeling a claim as "constitutional" does not suffice to make it so. *See, e.g., Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766, 769 (9th Cir.1986) ("A plaintiff will not be allowed to conceal the true nature of a complaint through 'artful pleading.' ") (citation omitted).

Congress has the authority to limit judicial review over the whole of Catholic Social Services' claims because those claims seek nothing more than to enforce statutory rights and interests created by IRCA. *See Lyng v. Payne,* 476 U.S. 926, 942, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921 (1986) (noting that the Court has never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause); *Atkins v. Parker,* 472 U.S. 115, 129, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985) ("The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.' ") (citation omitted); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (stating that property interests are not created by the Constitution and instead stem from an independent source); *Austin v. City of Bisbee,* 855 F.2d 1429, 1436 (9th Cir.1988) ("Property rights to public benefits are defined by the statutes or customs that create the benefits. When, as here, the statute authorizing the benefits is amended or repealed, the property right disappears.") (quotation marks and citation omitted).

We agree with Catholic Social Services that a statute that completely immunizes a statute from constitutional attack would raise difficult constitutional issues. *See Bartlett v. Bowen,* 816 F.2d 695, 703 (D.C.Cir.1987). *See also Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974) (statutory bar to court's deciding constitutionality of legislation would raise serious constitutional questions). Thankful-ly, however, we need not address those issues. This statute does not purport to limit the issues that federal courts may review. Instead, it restricts individuals who may challenge the constitutionality of a statute that creates a property or liberty interest to those who have been directly affected by an administrative regulation that would deny them a benefit conferred by Congress. Given Congress's sweeping power over immigration policy, we can not fault the statute on due process grounds.

### CONCLUSION

Section 377 is constitutional and is applicable to the current action. Because none of the class members or named plaintiffs have alleged that they actually tendered an application and fee or attempted to do so but were rebuffed by a legalization assistant, they do not have standing pursuant to the limited grant of federal court jurisdiction set forth in § 377.

The posture of this case differs from that presented to us the last time this case was before this court. Then, the Supreme Court had remanded to this court with instructions that there be a determination whether there were class members who satisfied the ripeness requirements for discretionary relief it had articulated in *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 66–67, 113 S.Ct. 2485, 2500–01, 125 L.Ed.2d 38 (1993). We in turn remanded to the district court for further proceedings consistent with the Supreme Court's opinion. *Catholic Social Services, Inc. v. Reno,* 996 F.2d 221, 222 (9th Cir.1993).

Catholic Social Services had over three years to amend their pleadings in response to the Court's decision in *Reno* before the enactment of § 377. They failed to do so. If the passage of time was not enough to close this window of opportunity, the enactment of § 377 did so. Section 377 did not change the requirement that class members must have been front-desked in order to have ripe claims; instead, § 377 eliminated federal court jurisdiction for aliens who were not actually front-desked but were discouraged by the policy. Moreover, § 377 was explicit-

ly made retroactive. It was made "effective as if included in the enactment of the Immigration Reform and Control Act of 1986." IIRIRA § 377, Pub.L. No. 104–208, 110 Stat. 3009 (1996).

The result of this retroactive application of § 377 is that the district court did not have jurisdiction to hear Catholic Social Services' claims nor to enter any orders on their behalf. When Catholic Social Services filed this action six days after the enactment of IRCA, no facts had been alleged that any of the class members had submitted applications pursuant to § 377's requirements. See *Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 2040, 124 L.Ed.2d 118 (1993) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought.") (internal quotation marks and citations omitted). Congress's ability to eliminate retroactively federal court jurisdiction in this manner is beyond question. See, e.g., *Landgraf v. USI Film Products*, 511 U.S. 244, 274, 114 S.Ct. 1483, 1501 (1994) ("We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed.") (citations omitted).

The enactment of § 377 also precludes this court from considering the class members' argument that § 377 violates the Equal Protection Clause of the Fifth Amendment. The class members before this court have not alleged facts sufficient to satisfy § 377's requirement that they were actually front-desked nor have they alleged facts sufficient to demonstrate that they were discouraged from filing an application by the front-desking policy. By enacting § 377, Congress explicitly denied the federal courts the power to review a constitutional challenge by persons who did not qualify for benefits because they had failed to present a complete application to a legalization officer within the statutory time limits.

Accordingly, we vacate the district court's interlocutory orders and remand with in-

structions to dismiss this action for lack of jurisdiction. See *Bruner v. United States*, 343 U.S. 112, 116–17, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952) (dismissing an action and noting that "[t]his rule—that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court").[4]

VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS.

SCHROEDER, Circuit Judge, dissenting in part:

I concur in the majority's holdings with one qualification and one exception.

First, the qualification. It is my view that under § 377, all those who actually tendered a completed form and fee, and those who went to the INS office to do so and were told it would be futile under the INS policy, have standing to have their claims adjudicated. That interpretation is consistent with the statute as read in light of the Supreme Court's decision that forms its backdrop, and which essentially held that all applicants who were blocked at the INS office by the "advance parole" policy had ripe claims. See *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 61–65, 113 S.Ct. 2485, 2498–99, 125 L.Ed.2d 38 (1993). It is also consistent with equal protection. To the extent the majority opinion can be read to suggest a narrower interpretation might be appropriate, I would disagree.

Second, after reviewing the plaintiffs' petition for rehearing, I must disagree with the bottom line of the opinion which instructs the district court to dismiss the action, in favor of permitting a new complaint to be filed. We should instead remand for the district court to determine whether there are class members who satisfy the standing requirements. That is exactly what the Supreme Court told us to do the last time. See *Catholic Soc. Services*, at 65–67, 113 S.Ct. at 2500. We should heed its direction. Because the new statute was passed while this appeal was

---

4. Nothing we have stated in this opinion should be construed as deciding the question whether a new complaint can be filed in the district court on behalf of persons who allege that they physically tendered a complete application and fee or attempted to do so. That issue is simply not before us.

pending, the plaintiffs have never had the opportunity to show that the class includes persons who satisfy the new requirements. Dismissal of the action will no doubt cause irreparable harm to those who have legitimate claims but who may be deported before a new complaint can be filed.

I otherwise agree with the majority opinion.