CATHOLIC SOCIAL SERVICES, INC.; American Federation of Labor—Congress of Industrial Organizations; United Farm Workers of America, AFL–CIO; Miguel Galvez Moran; Immigration Program; Esaul Delgadillo–Uribe; Gustavo Rodriguez; Anil K. Urmil; Ismael De La Cruz; Elma Barbosa; Qutb–E–Alam Kahn; Mohammed Haq; Jesus Reyna Reyna, Plaintiffs–Appellees,

v.

IMMIGRATION AND NATURALIZATION SERVICE; Janet Reno, Attorney General; Doris Meissner, Commissioner of Immigration and Naturalization Service, Defendants–Appellants.

Catholic Social Services, Inc.; United Farm Workers of America, AFL–CIO; Esaul Delgadillo–Uribe; Gustavo Rodriguez; Anil K. Urmil; Ismael De La Cruz; Miguel Galvez Moran; Elma Barbosa; Jesus Reyna Reyna; Qutbe–E–Alam Khan; Mohammed Haq, Plaintiffs–Appellants,

v.

Janet Reno, Attorney General; Doris Meissner, Commissioner of Immigration and Naturalization Service; Immigration and Naturalization Service, Defendants–Appellees.

Nos. 98–16269, 98–16423.

United States Court of Appeals, Ninth Circuit.

Argued March 2, 1999.

Submitted June 23, 1999.

Decided June 30, 1999.

M. Jocelyn Lopez Wright (argued), Keisha Dawn Bell, Department of Justice, Washington, D.C., for the defendants-appellants-cross-appellees.

Peter A. Schey (argued), Carlos Holguin (argued), Center for Human Rights and Constitutional Law, Los Angeles, California, for the plaintiffs-appellees-cross-appellants.

Before: SCHROEDER, ALARCON and O'SCANNLAIN, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Dissent by Judge SCHROEDER.

O'SCANNLAIN, Circuit Judge:

We must deal, once again, with the status of claims brought by some 45,000 illegal aliens, seeking legalization under 1986 immigration legislation, who failed to tender timely complete applications and fees.

I

The tortured history of this litigation has been recounted in detail in this court's prior opinions, *see Catholic Social Services, Inc. v. Reno,* 134 F.3d 921, 922–24 (9th Cir.1998); *Catholic Social Services, Inc. v. Thornburgh,* 956 F.2d 914, 916–18 (9th Cir.1992), and in the Supreme Court's opinion in *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 46–53, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). Suffice it to say that the Immigration and Naturalization Service ("INS") adopted a policy in 1986, revised in 1987, as part of its administration of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1255a ("IRCA"), which is at the root of this dispute. IRCA established a legalization program under which certain aliens unlawfully present in the United States could apply for status as temporary residents, and then seek permission to reside permanently in the United States. *See* 8 U.S.C. §§ 1255a(a), (b). Among other requirements, IRCA provided that, to be eligible, applicants had to prove continuous physical presence in the United States since November 6, 1986. *See id.* § 1255a(a)(3)(A). The INS enforced the continuous physical presence requirement of § 1255a(a)(3)(A) by denying adjustment of status to aliens who failed to obtain INS approval before leaving the United States for even the briefest of absences (the "advance parole policy").

In November 1986, a number of concerned organizations and individuals (collectively "Catholic Social Services" or "CSS") filed a complaint challenging the advance parole policy. CSS had asserted that the advance parole policy violated the statutory proviso that an alien would not fail to maintain continuous physical presence by virtue of "brief, casual, and innocent absences from the United States." *Id.* § 1255a(a)(3)(B). The district court certified a broad class of all persons who had not complied with the INS advance parole policy but were otherwise eligible for adjustment of status under 8 U.S.C.

§ 1255a, and subsequently ruled that the advance parole policy was contrary to the intent of the statute and hence unenforceable. *See Catholic Social Services, Inc. v. Meese,* 685 F.Supp. 1149, 1159–60 (E.D.Cal.1988) (*"CSS I"*). We affirmed the district court in a consolidated appeal. *See Catholic Social Services, Inc. v. Thornburgh,* 956 F.2d 914 (9th Cir.1992) (*"CSS II"*).

The Supreme Court, in turn, granted certiorari and vacated our decision, holding that only those persons who had taken affirmative steps toward legalization and had been stymied by the INS' advance parole policy had ripe claims. *See Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 58–59, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (*"CSS III"*). The Court described at some length the INS' practice, known as "front-desking," pursuant to which legalization assistants were instructed to review applications in the applicants' presence and to reject the applications of any aliens who were statutorily ineligible for legalization. Under this front-desking policy, aliens who disclosed unapproved trips outside the United States in violation of the advance parole policy had their applications rejected before the applications could be filed. *See id.* at 61–62, 113 S.Ct. 2485. The Court held that "the front-desking of a particular class member is not only sufficient to make his legal claims ripe, but *necessary* to do so." *Id.* at 66, 113 S.Ct. 2485 (emphasis added). The Court concluded, however, that it could not resolve the jurisdictional question regarding ripeness because the record did not contain evidence that particular class members were actually subjected to front-desking. *See id.* at 64–65, 113 S.Ct. 2485. Thus, the Supreme Court remanded to this court, with directions to remand to the district court for proceedings to determine which class members were front-desked. *See id.* at 66–67, 113 S.Ct. 2485. We, in turn, remanded to the district court for further proceedings consistent with the Supreme Court's opinion. *See Catholic Social Services, Inc. (Centro De Guadalupe Immi-*

*gration Center) v. Reno,* 996 F.2d 221, 222 (9th Cir.1993) (*"CSS IV"*).

On remand to the district court, CSS filed a Seventh Amended Complaint adding parties who had visited INS offices seeking to apply for legalization, but had been rebuffed by the INS without being provided application materials. The district court subsequently certified a modified and narrower class, and continued its prior orders providing interim relief for the class. The government appealed. During the pendency of the appeal from remand in *CSS IV,* Congress again amended the immigration laws by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Section 377 of IIRIRA provides:

(a) LIMITATION ON COURT JURISDICTION.-Section 245A(f)(4) (8 U.S.C. § 1255a(f)(4)) is amended by adding at the end the following new subparagraph:

"(C) JURISDICTION OF COURTS.

Notwithstanding any other provision of law, no court shall have jurisdiction of any cause of action or claim by or on behalf of any person asserting an interest under this section unless such person in fact filed an application under this section within the period specified by subsection (a)(1) of this section, or attempted to file a complete application and application fee with an authorized legalization officer of the Service but had the application and fee refused by that Officer."

(b) EFFECTIVE DATE.-The amendment made by subsection (a) shall be effective as if included in the enactment of the Immigration Reform and Control Act of 1986.

In disposing of the appeal of *CSS IV,* we rejected CSS' constitutional challenges to § 377, and held that, "[b]ecause none of the class members or named plaintiffs have alleged that they actually tendered an application and fee or attempted to do so but were rebuffed by a legalization assistant, they do not have standing pursuant

to the limited grant of federal court jurisdiction set forth in § 377." *Catholic Social Services v. Reno,* 134 F.3d 921, 927 (9th Cir.1997) ("*CSS V* "). Accordingly, we vacated the district court's interlocutory orders and remanded with instructions to dismiss for lack of jurisdiction.

The case before us now is a new class action, filed by CSS following dismissal on remand, alleging similar claims challenging the INS' advance parole and front-desking policies and again challenging the constitutionality of § 377. The plaintiffs in this incarnation of *Catholic Social Services* attempted to meet the jurisdictional requirements of § 377 by alleging that various claimants were front-desked after tendering a complete application and fee or were discouraged from doing so by the front-desking policy. The district court concluded that it lacked jurisdiction under § 377 over the claims of those who failed to tender a complete application and fee, but nonetheless entered a class-wide preliminary injunction against the deportation or revocation of employment authorization of any members of the former class until a plan was approved to identify which of the former class members were front-desked and, thus, part of the new class. *See Catholic Social Services v. Reno,* No. 98–629 (E.D. Cal. filed July 2, 1998) ("*CSS VI* ").

The government appeals the district court's entry of the class-wide injunction. CSS cross-appeals the district court's determination that, under § 377, it lacked jurisdiction over the claims of aliens who failed to tender a complete application form and fee.

## II

■ The question in the cross appeal of whether the district court had jurisdiction over any claims brought by aliens desiring legalization who did not tender a complete application and the requisite fee is quickly answered by the express statutory language and by our opinion in *CSS V.*

Section 377 of IIRIRA amended IRCA to provide, in relevant part, that:

> no court shall have jurisdiction of any ... claim by or on behalf of any person ... unless such person in fact filed an application ... within the period specified ... or attempted to file a complete application and application fee with an authorized legalization officer of the Service but had the application and fee refused by that officer.

8 U.S.C. § 1255a(f)(4)(C).

The plain language of § 377 would appear to preclude the exercise of jurisdiction over front-desked aliens who failed to tender a complete application and fee with an authorized legalization officer of the Service, and in *CSS V,* we so held:

> It is [ ] clear from the language of § 377 and the conference report that Congress intended to eliminate federal court jurisdiction over claims by aliens who were not actually subjected to front-desking but failed to file an application because of the front-desking policy. Section 377 expressly provides that federal court jurisdiction only extends to claims by those who "attempted to file a complete application and application fee with an authorized legalization officer ... but had the application and fee refused by that officer." While the phrase "attempted to file a complete application" might be ambiguous standing alone, any uncertainty disappears when these words are read in context. In order for a legalization officer to have refused a complete application, *a complete application must have been tendered.* Clearly, someone who was discouraged from filling out an application or whose request for an application was denied would not fall within the purview of § 377.

134 F.3d 921, 925–926 (emphasis added).

■ Chief Judge Karlton properly held that we are bound by law of the circuit to follow our holding in *CSS V. See, e.g., Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437, 1441 (9th Cir.1994) (" 'We are bound by decisions of prior panels' unless an en banc decision, Supreme Court decision or

subsequent legislation undermines those decisions." (quoting *United States v. State of Wash.,* 872 F.2d 874, 880 (9th Cir. 1989))). Thus, we reaffirm that federal courts have no jurisdiction over claims brought by aliens who failed to tender a complete application and fee with a legalization officer,[1] regardless of whether the failure to do so was attributable to the INS' front-desking policy.

CSS asserts that this jurisdictional bar raises serious constitutional issues because it forecloses an equal protection challenge to § 377 based on the distinction drawn in § 377 between aliens who tendered a complete application and fee and aliens who would have but for the INS' front-desking policy. As CSS points out, only those excluded from § 377's ambit have standing to bring an equal protection challenge to that section, but those with such standing are also those over whose claims "no court shall have jurisdiction." 8 U.S.C. § 1255a(f)(4)(C). We have, however, already resolved this issue. In *CSS V,* we specifically held that we could not consider CSS' equal protection challenge to § 377, because, "[b]y enacting § 377, Congress explicitly denied the federal courts the power to review a constitutional challenge by persons who did not qualify for benefits because they had failed to present a complete application to a legalization officer within the statutory time limits." 134 F.3d at 928. We are bound by our holding in *CSS V,* and must once again refuse to hear CSS' equal protection challenge to § 377.

## III

CSS appears to concede, with respect to the government's appeal, that the remainder of the front-desking and advance parole class claims underlying the injunction are barred by the relevant six-year statute of limitations, *see* 28 U.S.C. § 2401(a), unless tolling is available based on Catholic Social Services' original timely action filed in November 1986.[2] The government asserts that the district court erred by concluding that tolling was available under the *American Pipe* doctrine for a successor class action.

■ In *American Pipe and Construction Co. v. Utah,* the Supreme Court established that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). After *American Pipe,* a split of opinion developed among the federal courts of appeals as to whether tolling applied only to putative class members who sought intervention after class certification was denied, or whether it applied to any class member who later filed an individual action. In *Crown, Cork and Seal Co., Inc. v. Parker,* the Supreme Court resolved this controversy by holding that the filing of a class action tolled the statute for all asserted members of the class, not just for intervenors. *See* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

---

1. In *CSS V,* we concluded that the term "legalization officer" encompasses anyone authorized to receive applications, and not merely actual officers of the Service. *See* 134 F.3d at 924 n. 2 ("[T]he statute's requirement that a complete application form must be presented to a 'legalization officer' should be broadly construed to mean presentation to anyone authorized by the INS and IRCA to receive such form.").

2. The district court determined that the remainder of the class claims underlying the injunction accrued upon the INS' implemen-

tation of the advance parole and front-desking policies during the original application period provided by IRCA (which ended May 4, 1988). This 1998 action obviously having been filed more than six years after those events, the district court expressly considered whether tolling was available to save the time-barred claims. In its cross-appeal, CSS does not assert that any of the front-desking and advance parole class claims underlying the preliminary injunction were timely; instead, CSS relies upon the argument that its claims are not time-barred because tolling is available and appropriate.

The Supreme Court has not yet considered whether the filing of a class action tolls the statute of limitations for a subsequently filed successor class action. However, every circuit to consider the question, including this one, has held that such tolling is not available. *See Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir.1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely."), *cert. denied*, —— U.S. ——, 119 S.Ct. 165, 142 L.Ed.2d 135 (1998); *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir.1994) ("Plaintiffs may not piggyback one class action onto another and thus toll the statute of limitations indefinitely."); *Andrews v. Orr*, 851 F.2d 146, 149 (6th Cir.1988) ("The courts of appeals that have dealt with the issue appear to be in unanimous agreement that the pendency of a previously filed class action does not toll the limitations period for additional class actions by putative members of the original asserted class."); *Robbin v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir.1987) (holding that a class action tolls the statute of limitations only for subsequent individual actions, not for subsequent class actions); *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir.1987) (same); *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir.1985) (same).

In *Robbin v. Fluor Corp.*, we refused to extend tolling under *American Pipe* to successor class actions because such tolling would be contrary to "the policy considerations underlying the tolling doctrines of *American Pipe* and *Crown, Cork.*" 835 F.2d at 214. We further relied upon the "well-reasoned holdings" of the other circuits to have so decided because of the "abusive" nature of successive class actions. *See id.* Adopting the Second Circuit's reasoning in *Korwek*, we noted that "*American Pipe* and *Crown, Cork* represent a careful balancing of the interest of plaintiffs, defendants, and the court system," and "to extend tolling to class actions 'tests the outer limits of the *American Pipe* doctrine and ... falls beyond its carefully crafted parameters into the

range of abusive options.'" *Id.* at 214 (quoting *Korwek*, 827 F.2d at 879).

■ CSS asserts that tolling is appropriate for this successor class action because, unlike in *Robbin*, the original class here was granted class certification. Thus, CSS asserts that the *Robbin/Korwek* line of cases is distinguishable and inapplicable here because this second class action is not an "abusive" attempt to reargue the denial of class certification. *Robbin*, however, remains the law of the circuit, and CSS does not cite any authority for the proposition that *Robbin* was limited to instances in which class certification had been denied in a prior action. *Cf. Salazar–Calderon*, 765 F.2d at 1351 (noting that "[p]laintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any"). Nor is there is any intimation in *Robbin* itself that tolling might be appropriate where the class was dismissed for lack of jurisdiction, rather than for denial of class certification. *See Robbin*, 835 F.2d at 214–15. Moreover, even examining the facts of this case in light of principles set forth by Supreme Court in *American Pipe* and *Crown, Cork*, and relied on by this court in *Robbin*, there is no reason to allow tolling in this action. *See also Basch*, 139 F.3d at 11 ("The policies—respect for Rule 23 and considerations of judicial economy—which animated the *Crown, Cork* and *American Pipe* tolling rules dictate that the tolling rules ... not permit plaintiffs to stretch out limitations periods by bringing successive class actions.").

■ Indeed, this very case demonstrates why it would be "abusive" to allow tolling for successive class actions. *See Robbin*, 835 F.2d at 214. Such tolling would allow parties to bring a potentially endless succession of class actions, each tolling the statute of limitations for its successor. Furthermore, this would frustrate "[t]he principal purposes of the class-action procedure—promotion of efficiency

and economy of litigation —" *Crown, Cork,* 462 U.S. at 349, 103 S.Ct. 2392, because tolling of individual actions following the successor class would allow individual actions to be filed an absurdly long time after the events underlying the litigation. The case before us is an appeal from the entry of a preliminary injunction roughly thirteen years after the events in question, with final review of any individual claims, following resolution of the class litigation, destined to occur sometime far into the next millennium. And parties like CSS have no incentive not to file an endless succession of class actions because they clearly benefit from any resulting delay, regardless of whether the resolution of their claims is favorable. *See INS v. Doherty,* 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) ("[A]s a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States."). We agree with the First Circuit that "[t]his simply cannot be what the *American Pipe* rule was intended to allow." *Basch,* 139 F.3d at 11.

Further, this new class action does not raise the efficiency concerns present in most other class actions because there is in fact no need for class treatment of CSS' claims. *Cf. Crown, Cork,* 462 U.S. at 351, 103 S.Ct. 2392 (noting that the *American Pipe* tolling rule was designed to avoid the inefficiencies that would result from "a needless multiplicity of actions"). Unlike normal claims of injury that are lost where barred by the relevant statute of limitations, CSS' challenges to the front-desking and advance parole policies may be raised by individual aliens in the judicial review of their deportation orders. In fact, both IRCA and IIRIRA imply that judicial review of such questions cannot occur outside the context of review of an order of deportation. *See* 8 U.S.C. § 1255a(f)(4)(A) ("There shall be judicial review of [a denial of legalization] only in the judicial review of an order of deportation."); *see also id.* § 1252(b)(9) (providing for the "Consolidation of questions for judicial review" in the judicial review of a final order of deporta-

tion). Class treatment is unnecessary; a ruling by this court in the review of an individual alien's deportation order would be dispositive in all similar cases within the circuit, and aliens forced to raise their front-desking and advance parole challenges in their deportation review would not have to re-invent the wheel in each case. *Cf. Naranjo–Aguilera v. INS,* 30 F.3d 1106, 1114 (9th Cir.1994) ("When a court of appeals invalidates a regulation, even in the context of review an individual petitioner's order of deportation, that regulation is infirm across the circuit and in every case.").

It must also be said that tolling is inappropriate because the aliens represented by CSS did, in an important sense, sleep on their rights. *See American Pipe,* 414 U.S. at 554, 94 S.Ct. 756 (noting policy of denying tolling to parties who have slept on their rights). In *CSS III,* the Supreme Court put CSS on notice that, absent allegations that class members seeking legalization were front-desked after presenting applications to the INS, its claims were not justiciable. *See* 509 U.S. at 66, 113 S.Ct. 2485. Thus, CSS could have avoided dismissal of its original timely action by alleging that class members had been front-desked after presenting applications. As we noted in *CSS V,* "CSS had over three years to amend their pleadings in response to the Court's decision in [*CSS III*] before the enactment of § 377. They failed to do so." 134 F.3d at 927. In fact, CSS did amend its pleadings in response to *CSS III* by filing a Seventh Amended Complaint, but inexplicably failed to include allegations of front-desking, instead adding parties who had merely been discouraged from applying by the front-desking policy, and thus had never been front-desked. Nor can it be argued that the passage of § 377 somehow explains CSS' failure to address the front-desking issue prior to dismissal because, as we noted in *CSS V,* "[s]ection 377 did not change the requirement that class members must have been front-desked in order to have ripe claims; instead, § 377 eliminated federal court jur-

isdiction for aliens who were not actually front-desked but were discouraged by the policy." *Id.* Thus, § 377 merely eliminated jurisdiction over those whose claims were not ripe pursuant to the Supreme Court's holding in *CSS III,* and did not impose any additional requirements for the former class that might have caught Catholic Social Services unawares. While we do not suggest in the slightest that CSS is abusively trying to relitigate the issue of class certification, we are persuaded that tolling is not appropriate in this case where CSS is trying to relitigate other issues it clearly had an opportunity to address in the previous class action.

Finally, while *Robbin,* rather than *Korwek,* is binding upon this court, we note that CSS' reliance upon *Korwek* is misplaced. *Korwek* did not recognize or endorse tolling for successor class actions. While *Korwek* reserved the question of whether "the filing of a potentially proper subclass would be entitled to tolling under *American Pipe,*" *Korwek* also recognized that extending tolling to class actions "tests the outer limits of the *American Pipe* doctrine and ... falls beyond its carefully crafted parameters into the range of abusive options." 827 F.2d at 879. And *Korwek* was a case, like this one, in which a class had been certified in the previous action. *See id.* at 877. Thus, contrary to CSS' arguments, *Korwek* does not provide support for the proposition that tolling is appropriate where, as here, the previous class was granted (rather than denied) certification. Instead, *Korwek* makes plain that "the tolling rule established by *American Pipe,* and expanded upon by *Crown, Cork,* was not intended to be applied to suspend the running of statutes of limitations for class action suits filed after a *definitive determination of class certification."* *Id.* at 879 (emphasis added). Here, there was such a "definitive determination of class certification" in the prior action; thus, *Korwek* does not sup-

port tolling for this successor class action. And like the Second Circuit in *Korwek,* we need not determine whether in some situations tolling might be available for a properly limited successor "subclass" action, because here, tolling is so clearly inappropriate and unnecessary.[3]

## IV

■ Having determined, with respect to the government's appeal, that the remainder of the class claims underlying the injunction are barred by the relevant statute of limitations, we need not consider the merits of CSS' challenges to the advance parole and front-desking policies. We note, however, that regardless of the merits of those challenges, the preliminary injunction itself is plainly contrary to the specific jurisdictional limitation on injunctive relief provided by 8 U.S.C. § 1252(f).

Section 1252(f) of Title 8 (as added by IIRIRA § 306(a)) is entitled "Limit on injunctive relief" and provides that:

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, *no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter* [8 U.S.C. 1221–1231], as amended by [IIRIRA], *other than with respect to the application of such provisions to an individual alien* against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f) (emphasis added).

Part IV is entitled "Inspection, Apprehension, Examination, Exclusion, and Removal," and governs detention and deportation of aliens. *See* 8 U.S.C. § 1221 *et seq.* Thus, the plain language of § 1252(f) would seem to preclude classwide injunctive relief barring detention and deportation. The Supreme Court confirmed as

---

**3.** Contrary to the dissent's contention, we do not hold that "plaintiffs, before 1993, should have responded to a statute that was not passed until 1996." As explained in part II,

*supra,* we do not have jurisdiction to consider CSS's challenge to § 377 of IIRIRA—the statute passed in 1996—regardless of whether that challenge was timely.

much in *Reno v. American–Arab Anti–Discrimination Committee*:

> By its plain terms, and even by its title, [§ 1252(f) ] is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting *classwide* injunctive relief against the operation of [part IV], but specifies that this ban does not extend to individual cases.

—— U.S. ——, ——, 119 S.Ct. 936, 942, 142 L.Ed.2d 940 (1999) (emphasis added).

CSS asserts that § 1252(f) does not bar the classwide injunctive relief granted here because the district court's injunction is a remedy for claims brought under the legalization provisions of part V ("Adjustment and Change of Status"), rather than for claims brought under the deportation and detention provisions of part IV. However, the injunctive relief granted by the district court clearly interferes with the operation of the detention and deportation provisions of part IV because the preliminary injunction bars the detention and deportation of members of the former class. Thus, regardless of the fact that the injunction provides relief for a harm ostensibly created by the INS' misinterpretation of the legalization provisions of part V, insofar as it would interfere with the operation of part IV, the injunction here is contrary to the plain language of § 1252(f) and the district court lacked the jurisdiction to enter it. *See American–Arab*, —— U.S. at ——, 119 S.Ct. at 942.

### V

For the foregoing reasons, in the government's appeal, we reverse the preliminary injunction because the class claims underlying the injunction are barred by the relevant statute of limitations, and in Catholic Social Services' cross-appeal, we affirm the district court's holding that it did not have jurisdiction over the claims of aliens who failed to tender a complete legalization application and fee. Accordingly, we remand to the district court with instructions to dismiss the time-barred claims.

AFFIRMED in part, REVERSED in part, and REMANDED with instructions.

SCHROEDER, Circuit Judge, dissenting:

The majority holds that the plaintiffs' class action is barred by the six-year statute of limitations because the plaintiffs failed to file a class action on behalf of this class within six years of the adoption of the challenged regulations. Yet plaintiffs were members of the class that did file a timely action in 1986 to challenge the policies. The present action seeks to present a claim within the standing limitations of a statute that was not enacted until 1996. Thus the majority holds that the plaintiffs, before 1993, should have responded to a statute that was not passed until 1996.

Having already filed a complaint in 1986, plaintiffs should have been able to proceed by amending their original complaint to respond to the new statute. They had to file this second class action only because, in an earlier appeal, the majority ordered the first action dismissed without an opportunity to amend, thus creating the very statute of limitations issue that confronts us today. *See Catholic Social Servs. v. Reno*, 134 F.3d 921 (9th Cir.1998) ("*CSS V*"). As I wrote in my partial dissent then, the majority should have followed the lead of the Supreme Court in its 1993 opinion in *Reno v. Catholic Social Servs.*, 509 U.S. 43, 65–67, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) ("*CSS III*"), and remanded for the district court to determine whether there were members of the larger class that met the new standing requirements. *CSS V*, 134 F.3d at 928–29 (Schroeder, J. dissenting in part). Having left the door open a crack at that time, *CSS V*, 134 F.3d at 928 n. 4, the majority now slams it shut and effectively announces that we have all been wasting our time for the last thirteen years of class litigation.

The guiding authorities should be *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713

(1974), and *Crown, Cork & Seal, Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), which address the problem of asserted members of an uncertified class action who rely upon that ongoing litigation representing their interests and refrain from filing a separate suit. These cases hold that, for such plaintiffs, the statute of limitations is tolled during the period of the pendency of the class action. *See American Pipe,* 414 U.S. at 554, 94 S.Ct. 756; *Crown, Cork,* 462 U.S. at 350, 103 S.Ct. 2392. This case presents an even more compelling argument for tolling than *American Pipe* and *Crown, Cork,* since the same organizational plaintiffs and their attorneys have continually directed all of this litigation and have conscientiously sought to respond to the changing legal standards imposed by Congress and the courts. Unlike the authorities relied upon by the majority, plaintiffs are guilty of no abuse.

In the cases the majority cites, the plaintiffs were not doing their best to respond to shifting legal standards but were trying to relitigate the issue of class certification. *See Basch v. Ground Round, Inc.,* 139 F.3d 6, 11 (1st Cir.1998) (plaintiffs cannot perpetually toll the statute of limitations by filing successive class actions to attract more potential plaintiffs "regardless of how many times a court declines to certify the class"); *Griffin v. Singletary,* 17 F.3d 356, 359 (11th Cir. 1994) (plaintiffs may not piggyback class actions onto each other to repeatedly litigate the issue of the adequacy of the named class representative); *Andrews v. Orr,* 851 F.2d 146, 148 (6th Cir.1988) (prior action where class certification denied did not toll the statute of limitations for subsequent class action); *Robbin v. Fluor Corp.,* 835 F.2d 213, 214–15 (9th Cir.1987) (same); *Korwek v. Hunt,* 827 F.2d 874, 879 (2d Cir.1987) ("The Supreme Court ... certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints."); *Salazar–Calderon v. Presidio Valley Farmers Assoc.,* 765 F.2d 1334, 1351 (5th Cir.1985) (statute of limitations tolled the first time plaintiffs move to certify a class; if this motion fails, the statute of limitations is not tolled during any subsequent certification motions). The majority correctly notes that *Robbin* is the law of the circuit and that we must obey its holding. *See* Maj. Op. at 1059. But *Robbin* does not speak to the issue that confronts us here. As the majority recognizes, in *Robbin* we adopted the Second Circuit's reasoning in *Korwek.* Maj. Op. at 1059. *Korwek* expressly left open almost the identical question presented here: "whether the filing of a potentially proper subclass would be entitled to tolling under *American Pipe.*" 827 F.2d at 879.

The majority faults the plaintiffs for not citing authority in support of their argument that the statute of limitations should be tolled for a subsequent class action only where the prior class action was not certified. Maj. Op. at 1059. More telling is that the majority does not cite to a single case where tolling was not allowed when the prior class action was certified but the case dismissed on unrelated grounds. The majority implies that *Korwek* was such a case, Maj. Op. at 1061, but a close reading of *Korwek* discloses that the plaintiffs sought to certify a class nearly identical to a class that the district court had previously rejected. 827 F.2d at 876, 879.

In contrast to the cases cited by the majority, tolling in the present case would further the policy of judicial efficiency and economy underlying the class action procedure. *American Pipe,* 414 U.S. at 553, 94 S.Ct. 756. Judicial economy would be ill-served by forcing the plaintiffs here to proceed in individual lawsuits. *Id.* at 553–54, 94 S.Ct. 756; *see also Crown, Cork,* 462 U.S. at 350–51, 103 S.Ct. 2392. "The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Crown, Cork,* 462 U.S. at 351, 103 S.Ct. 2392.

Moreover, allowing tolling here would not frustrate the two purposes of the stat-

ute of limitations, which are giving timely notice to defendants and barring plaintiffs who have slept on their rights. *American Pipe*, 414 U.S. at 554, 94 S.Ct. 756; *Crown, Cork*, 462 U.S. at 352, 103 S.Ct. 2392. The government is not being caught unaware in this case. The prior *CSS* suit informed the government "not only of the substantive claims being brought against [it], but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 554–55, 94 S.Ct. 756. Furthermore, "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights." *Crown, Cork*, 462 U.S. at 352, 103 S.Ct. 2392. It was entirely appropriate for the plaintiffs here to rely on the previous action. The class that was certified in the prior *CSS* litigation encompassed claims of front-desking. *CSS III*, 509 U.S. at 47–48, 113 S.Ct. 2485; *CSS V*, 134 F.3d at 924. Nor has CSS slept on its rights by not anticipating IIRIRA. The majority's holding thus disregards the Supreme Court's reasoning in *American Pipe* and *Crown, Cork* and works a grave injustice upon aliens who have been aggrieved by an INS regulation that we have recognized as invalid. *Catholic Social Servs., Inc. v. Thornburgh*, 956 F.2d 914 (9th Cir.1992), *vacated on other grounds, CSS III*, 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).

For these reasons, I respectfully dissent.