**Iftikhar A. SIDDIQUI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE and John Ashcroft,
Attorney General of the United States,
Respondents.**

**No. 00–1653.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 2000.

Decided May 30, 2001.

Rehearing Denied July 25, 2001.

Before FAIRCHILD,
EASTERBROOK, and MANION, Circuit
Judges.

ORDER

Iftikhar Siddiqui, a native of Pakistan, seeks review of a decision by the Board of Immigration Appeals in which the Board dismissed his appeal of an Immigration Judge's determination that Siddiqui was deportable. We affirm the Board's decision.

I.

Iftikhar Ahmed Siddiqui, a native and citizen of Pakistan, resided in the United States illegally for a time before returning to Pakistan. Siddiqui returned to the United States on October 13, 1987, but he entered the United States without inspection near San Ysidro, California. On February 4, 1993, the Immigration and Naturalization Service (the "INS") arrested Siddiqui and served him with an Order to Show Cause, alleging that pursuant to 8 U.S.C. § 1227(a)(1)(B),[1] he was deportable for entering the United States without inspection.

At his hearing before an Immigration Judge, Siddiqui admitted that he was a native and citizen of Pakistan, that he entered the United States near San Ysidro on or about October 13, 1987, and that he was not inspected by an Immigration Officer. Based on Siddiqui's admissions, the judge found that there was "clear, convinc-

---

1. This is the current provision. The Order actually charged that Siddiqui was deportable under Section 241(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(B). The provisions are now co-dified as INA Section 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). For simplicity, we will refer only to the current provision: 8 U.S.C. § 1227(a)(1)(B).

ing and unequivocal" evidence that he was deportable. But Siddiqui moved to terminate the deportation proceedings, asserting that he was a member of a class action lawsuit, *Catholic Social Services, Inc. v. Meese*, 685 F.Supp. 1149 (E.D.Cal.1988) ("*CSS–1*"), and that as a result of an order issued in the *CSS–1* litigation, he was entitled to a stay of any charges of deportation.

At this point, in order to explain Siddiqui's claims, it is necessary to provide some background on the relationship between the *CSS–1* litigation and an amnesty program established to accommodate some aliens who were living in the United States illegally. On November 6, 1986, the President of the United States signed the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1255a, which offered amnesty to long-term illegal aliens who could demonstrate a capacity to be productive members of society. *See Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 46, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)("*CSS–3*"). Specifically, Title II of IRCA established a scheme under which certain aliens unlawfully present in the United States could apply for the status of a temporary resident, and then, after a 1-year wait, could apply for permission to reside permanently. *CSS–3*, 509 U.S. at 46. To qualify for temporary resident status, an alien must establish that he: (1) resided continuously in the United States in an unlawful status since at least January 1, 1982; (2) was physically present in the United States continuously since November 6, 1986, the date of IRCA's enactment; (3) was otherwise admissible as an immigrant; and (4) submitted a legalization application during the 12-month application period from May 5, 1987 to May 5, 1988. *Id.*

In *CSS–1*, a class of aliens alleging that they were eligible for naturalization under IRCA challenged the INS's interpretation of IRCA's continuous physical presence requirement, 8 U.S.C. § 1255a(a)(3)(A). *CSS–1*, 685 F.Supp. at 1151. Subparagraph (B) of that provision allowed for an exception to that requirement, providing that an "alien shall not be considered to have failed to maintain continuous physical presence in the United States for purposes of subparagraph (A) by virtue of brief, casual, and innocent absences from the United States." § 1255a(a)(3)(B). The INS construed that exception rather narrowly, viewing an absence to be "brief, casual, and innocent" only if the alien obtained the INS's prior approval before leaving the United States. *CSS–3*, 509 U.S. at 47. According to this "advance parole" policy, aliens who left the country without the INS's permission effectively breached their continuous physical presence in the United States, rendering them ineligible for legalization benefits under IRCA. *Id.* at 47–49.

The *CSS–1* plaintiffs prevailed in the district court, as the court held that the advance parole policy was "invalid as inconsistent with the statutory scheme and hence is unenforceable." *CSS–1*, 685 F.Supp. at 1160. The government did not appeal that holding, but it did appeal the district court's remedial orders requiring an extension of the twelve-month application period under IRCA from May 1988 to November 1988. *See Catholic Social Services, Inc. v. I.N.S.*, 232 F.3d 1139, 1142 (9th Cir.2000) ("*CSS–5*"). During the pendency of that appeal, the INS was ordered to grant a stay of deportation to any class member whose application made a prima facie showing of eligibility for legalization. *See CSS–3*, 509 U.S. at 53 n. 13. The Ninth Circuit affirmed the district court in *Catholic Social Services, Inc. v. Thornburgh*, 956 F.2d 914 (9th Cir.1992) ("*CSS–2*").

At Siddiqui's hearing before the Immigration Judge, he argued that he was entitled to a stay of his deportation charges because he was an applicant for class membership in the *CSS* case. The INS responded that its agency records showed that Siddiqui's class membership application was denied in June of 1992.[2] The Immigration Judge then concluded that there was "no indication" that Siddiqui was protected by the *CSS* litigation, and that while class members were entitled to a stay of deportation, they were not entitled to a stay of deportation proceedings. Thus, the Immigration Judge reasoned, even if Siddiqui was a class member, that status did not prohibit the judge from entering a deportation order, it only prohibited the execution of that order. The Immigration Judge concluded that Siddiqui was deportable under 8 U.S.C. § 1227(a)(1)(B) for entry without inspection, and ordered him deported to Pakistan. Siddiqui appealed to the Board of Immigration Appeals (the "Board"), arguing that the deportation proceedings against him should have been terminated because he had filed an application for class membership in *CSS*.

While the appeal was pending before the Board, the *CSS* litigation proceeded to the Supreme Court, which considered whether any of the class member's claims were ripe. *CSS–3*, 509 U.S. at 59. The Court described an INS procedure called "front-desking," where INS Legalization Assistants were instructed to review legalization applications at the front-desk of the INS office, and to reject the applications of any aliens deemed ineligible for legalization un-

der IRCA. *Id.* at 61–63. Under this front-desking policy, the Assistants rejected IRCA applications before they could be filed if the Assistants determined that the aliens had traveled outside of the United States without the INS's prior approval (in other words, in violation of the advance parole policy). *See CSS–5*, 232 F.3d at 1142–43. According to the Supreme Court, "a class member's claim would ripen only once he took the affirmative steps that he could take [towards IRCA legalization benefits] before the INS blocked his path by applying [the advance parole] regulation to him." *CSS–2*, 509 U.S. at 59. Thus the Court vacated the Ninth Circuit's decision and remanded the case to the Ninth Circuit with directions to remand to the district court for "proceedings to determine which class members were front-desked." *Id.* at 66–67.

As the *CSS* case continued, Congress amended IRCA in order to put an end to the litigation seeking to extend the amnesty provisions. *See Catholic Social Services, Inc. v. Reno*, 134 F.3d 921, 925 (9th Cir.1997)("*CSS–4*"). Towards that end, Congress enacted Section 377 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which limits the courts' jurisdiction over claims brought under IRCA.[3] *CSS–5*, 232 F.3d at 1144. Section 377 provides:

Notwithstanding any other provision of law, no court shall have jurisdiction of any cause of action or claim by or on behalf of any person asserting an interest under this section unless such person in fact filed an application under this section within the

---

2. An alien's application for *CSS* class membership should not be confused with an alien's application for legalization benefits under the IRCA amnesty program. During the *CSS* litigation, an alien could assert his membership in the *CSS* class to stay his deportation. But he must still complete a legalization application under IRCA during the

statutory application period to qualify for temporary resident status under the IRCA. 8 U.S.C. § 1255a(a)(1).

3. Section 377 is codified as 8 U.S.C. § 1255a(f)(4)(C). Because this provision appears to be more popularly known as "Section 377," we will refer to it as such.

[twelve-month] period specified by subsection (a)(1) of this section, or attempted to file a complete application and application fee with an authorized legalization officer of the [INS] but had the application and fee refused by that officer.

8 U.S.C. § 1255a(f)(4)(C). Congress made 377 retroactive, and thus effective as if included in the enactment of IRCA. *See CSS-4*, 134 F.3d at 924. Based on 377, in January of 1998, the Ninth Circuit remanded the case to the district court with instructions to dismiss for lack of jurisdiction, concluding that none of the class members "have alleged that they actually tendered an [IRCA] application and fee or attempted to do so but were rebuffed by a legalization assistant." *Id.* at 927.

On February 14, 2000, the Board dismissed Siddiqui's appeal, concluding that based on 377, "it appears that whether or not [Siddiqui] was a member of the CSS class becomes irrelevant as there is no longer a court order permitting CSS class members to be considered for legalization." Siddiqui appeals.

## II.

Siddiqui argues that the Service's records constituted insufficient proof that his application for *CSS* class membership was denied, and thus the Immigration Judge erroneously failed to consider his *CSS* class defense to his deportation charge. Siddiqui also claims that the Immigration Judge and Board erroneously failed to consider whether his deportation charge of illegal entry was the result of the Service's invalid advance parole policy, and thus his alleged membership in the *CSS* class should have closed his deportation proceedings.

We first note that even if the Immigration Judge accepted Siddiqui's allegation that he was a *CSS* class member, his membership did not require the Immigration Judge to stay Siddiqui's deportation proceedings; it only required the judge to stay the execution of any deportation order. *See generally Yao v. I.N.S.*, 2 F.3d 317, 319 (9th Cir.1993).

Moreover, Siddiqui's claims on appeal all boil down to his assertion of an interest in legalization under IRCA. But he fails to show that he meets the requirements of Section 377. He never alleged any facts to the Immigration Judge or to the Board that he completed an IRCA legalization application during the statutory period, or that he attempted to file a timely IRCA application but was front-desked. Siddiqui concedes in his reply brief that "there is little-to-no-evidence in the record that he tried to file a legalization application during the statutory period." We see *no* such evidence in the record.[4] Therefore, Section 377 deprives this court of jurisdiction to consider Siddiqui's claims for legalization benefits under IRCA.

Accordingly, we AFFIRM the Board's decision.

THOMAS E. FAIRCHILD, Circuit Judge, dissents.

With all respect, I cannot agree with the majority's disposition of this matter.

We have jurisdiction of this petition for review pursuant to former 8 U.S.C. § 1105a(a)(1). The repeal of that section does not apply to this deportation proceeding, commenced before April 1, 1997. IIRIRA § 309(c)(1). Although no court has jurisdiction of a "cause of action or claim" under § 1255a unless the person "attempted to file a complete application and application fee with ... the Service but had the

---

4. The dissent refers to a May 4, 2000 affidavit by Siddiqui as being before us. The affidavit did arrive at the clerk's office attached to a motion, but it is not part of the record for this appeal.

application and fee refused," I do not think that provision deprives us of the power to determine, on petition for review of a deportation order, whether the INS procedure has been sufficient to support the order.

The hearing before the Immigration Judge, March 30, 1993, was full of confusion as to whether Siddiqui had filed an application for legalization or an application for CSS class membership, whatever sort of procedure the latter may be. The significant difference is that there can be judicial review of a denial of the former as part of judicial review of the deportation order. 8 U.S.C. § 1255a(f)(4)(A). Siddiqui's then attorney told the judge that she was contesting deportation on the ground that he "is an applicant [for legalization] under class membership of *CSS v. Meese.*" She referred to two INS file numbers and the judge asked the INS attorney about them. She replied, in part, that "He left the country in April of '92." That appeared not to be true. It developed that it was the INS trial attorney's position that there had been a number of work authorization numbers in Siddiqui's case, and the INS determined that one of them was an invalid number; that he had applied for "legalization" in June of 1992 and that application was denied by the INS. Later she referred to this as "an application in June '92 for CSS." In response to a question from the Immigration Judge about the denial of the "legalization application," the trial attorney said she had a note of it, but no copy of the denial; that she didn't have the portion of the file dealing with legalization. The Judge later said to Siddiqui's attorney, "I'd have to see your authority for that ... for that proposition that the Service cannot bring charges against ... against an alien who had filed an application for legalization which was denied for a CSS class membership." In a signed decision, entitled "Oral decision of the Immigration Judge," the Judge referred to the

application as an "application for legalization."

Notwithstanding the confusing oral references by both counsel and the court to the nature of the application, I read the Judge's decision as premised in part on the fact that an application for "legalization" had been denied and in part on his conclusion that the CSS court order would at most prohibit deportation, but not deportation proceedings. In any event, orderly procedure would have required the production of the denial, particularly because the denial could be judicially reviewed "only in the judicial review of an order of deportation." 8 U.S.C. § 1255a(f)(4)(A).

I note that the counsel who represented Siddiqui before the BIA referred to the application at times as one for legalization and at times as one for class membership. INS counsel, however, referred to it as "his application for legalization." The BIA decision referred to "his legalization application," but focused on the proposition that there was no longer a court order protecting the CSS class. The Department of Justice Attorney representing the INS in this court insists that it was an application for class membership in CSS. Respondent's brief, page 3.

Although Siddiqui was not called to testify, and there was no evidence before the Immigration Judge that Siddiqui had been "front-desked," we have before us as an attachment to Siddiqui's motion in this court for stay of deportation his affidavit, dated May 4, 2000, stating as facts that he had been "front-desked" at an INS legalization office in Chicago in December 1987 or January 1988. If these asserted facts be correct, a court is not barred from jurisdiction to hear his claim. See generally *Catholic Social Services, Inc. v. INS*, 232 F.3d 1139 (9th Cir.2000).

In oral argument the attorney for the INS again asserted that Siddiqui had nev-

er filed a legalization application. He stated his belief that Siddiqui's front-desking questionnaire has been denied. Asked if the denial could be judicially reviewed, he replied that it could be in a review of a subsequent deportation proceeding. Asked if we could take judicial notice of the denial, he said he would argue that we could not do so because it is a separate proceeding.

I would vacate the order under review in the hope that in further proceedings all the relevant facts could be assembled with clarity.