**CATHOLIC SOCIAL SERVICES, INC.,** (Centro De Guadalupe Immigration Center), et al., Plaintiffs,

v.

**John ASHCROFT, Attorney General of the United States of America, et al., Defendants.**

No. S–86–1343 LKK.

United States District Court, E.D. California.

Feb. 15, 2002.

Peter A Schey, Center for Human Rights and Constitutional Law, Los Angeles, CA, Michael Rubin, Altshuler Berzon Nussbaum Rubin and Demain, San Francisco, CA, Robert Pauw, Northwest Immigrants' Rights Project, Seattle, WA, Miriam Hayward, International Institute of the East Bay, Oakland, CA, Luis Alfonso Cespedes, Law Offices of Luis Alfonso Cespedes, Sacramento, CA, Stephen Allen Rosenbaum, Protection and Advocacy Inc, Oakland, CA, Robert H Gibbs, Gibbs Houston Pauw, Seattle, WA, Ralph Santiago Abascal, California Rural Legal Assistance, San Francisco, CA, for plaintiffs.

Glyndell E Williams, United States Attorney, Sacramento, CA, Robert Kendall, Jr., Earle B. Wilson, Andrew C. MacLachlan, Department of Justice Office of Litigation, Keisha Dawn Bell, United States Department of Justice, Office of Immigration Litigation, Donald E. Keener, Stephen W. Funk, for defendants.

## ORDER

KARLTON, Senior District Judge.

Plaintiffs bring a class action challenging the advance parole policy of the Immigration and Naturalization Service ("INS") as inconsistent with the Immigration Reform and Control Act of 1986 ("IRCA"). The litigation has continued for some fifteen years, protracted by congressional intervention and appeals that have resulted in various modifications of the class and, at one point, dismissal. Now, pursuant to court order, the parties have once again submitted modified class definitions. Plaintiffs seek to amend their complaint to add named plaintiffs and a claim, and to modify the class definition to reflect such amendment. Defendants oppose.

## I.

## PROCEDURAL HISTORY

For purposes of the motion before the court, the relevant history of this case begins with the court's remedy in *CSS I*.[1] At issue in *CSS I* was an INS regulation providing that an absence was not "brief, casual, and innocent," within the meaning of IRCA unless the INS had granted advanced parole. This court found that the INS regulation was inconsistent with the plain language of the IRCA, and declared the regulation invalid. *See Catholic Social Services v. Meese,* 685 F.Supp. 1149 (E.D.Cal.1988).

The court issued a remedial order on June 10, 1988, which provided for final relief for class members who did not file legalization applications because of the invalid regulation. This remedial order provided in relevant part that the INS would accept legalization appli-

---

1. *CSS I* refers to the original action filed by plaintiffs in 1986 and ending with this court's dismissal of the plaintiffs' seventh amended complaint on March 10, 1998.

cations from these class members until November 30, 1988. *See* June 10, 1988 Order at 4:14–16. This provision also stated that, should the order be stayed, class members would have 180 days to file for legalization after the order was ultimately affirmed. *See* June 10, 1998 Order at 4:16–19.

However, the extended application period provided for in the June 10 order has never gone into effect. Pending further motions by the parties, the provision ordering the extended application period was stayed. *See* June 24, 1988 Order at 3:25–26. In the interim, the court provided that class members should not be deported. *See* June 24 Order at 4:1–9. Defendants were ordered to inquire regarding the possible class membership of aliens who were apprehended and detained, *see id.* at 4:10–14, give such apprehended aliens twenty days to submit evidence of their class membership before expulsion from the country, *see id.* at 4:15–21, and give those who were determined to be class members the names and phone numbers of plaintiffs' counsel who could inform them of additional rights they might have as class members. *See id.* at 26–2. On August 11, 1988, the court vacated the June 24, 1988 Order and modified the June 10, 1988 Order. *See* August 11, 1988 Orders. However, the INS immediately moved the Ninth Circuit for a stay of the August 11, 1988 orders and in the interim the parties stipulated that the stay provisions of this court's June 24, 1988 Order would remain in effect. See Joint Application for Temporary, Interim Stay Pending Disposition of Appellant's Motion for Stay; September 6, 1988 Ninth Circuit Order.

The Ninth Circuit granted in part and denied in part the INS's stay motion, continuing the stipulated stay by the parties until the Ninth Circuit could issue a decision on the merits. *See* September 20, 1988 Ninth Circuit Order. This meant that the terms of this court's June 24, 1988 Order were still in effect. The Ninth Circuit's order further provided for release from custody and temporary employment authorization for class members pending the outcome of the INS's appeal of this court's final relief orders. *See* September 20, 1988 Ninth Circuit Order at 1–2.

On February 13, 1992, the Ninth Circuit affirmed this court's final relief order extending the application period for legalization applications. *See Catholic Social Services, Inc. v. Thornburgh,* 956 F.2d 914, 922–23 (9th Cir.1992). The Supreme Court granted *certiorari,* however, *see Barr v. Catholic Social Services, Inc.,* 505 U.S. 1203, 112 S.Ct. 2990, 120 L.Ed.2d 867 (1992), and the Ninth Circuit stayed its mandate, leaving interim stay orders in effect. *See Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 53 n. 13, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).

While the case was pending before the United States Supreme Court, the parties continued to litigate over the enforcement of the interim stay. In August, 1992, plaintiffs filed their motion to enforce the Ninth Circuit's September 20, 1988 interim relief order in this court. *See* Plaintiff's Motion to Enforce Stay Order, August 13, 1992. That motion was finally resolved by way of a stipulated order filed March 4, 1993. The parties stipulated that the Ninth Circuit's interim stay order would be enforced pursuant to national standards agreed upon by the parties, so long as the Ninth Circuit's stay order remained in effect. *See* March 4, 1993 Stipulation and Order at 1 ¶ 3. The National Standards memorandum explained:

> While INS has appealed the extension of the application period [as provided for in this court's final relief order], it must abide by stay requirements set by the district court and the court of appeals. INS must grant work authorization and stays of deportation to class members and must question apprehended and detained alines on class membership claims....
>
> \*\*\*
>
> \*\*\*
>
> This memorandum describes the standards and procedures for class member determinations....

March 4, 1993 Stipulation and Order, attached CSS National Standards at 1.

A few months after the parties stipulated to this enforcement order, the United States Supreme Court vacated the Ninth Circuit's

decision and remanded, concluding that plaintiffs had not established that their claims were ripe as they had not demonstrated that they had taken the "affirmative steps" available before the INS prevented them from applying via the regulation. *See Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 59, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).

After remand, plaintiffs filed a Seventh Amended Complaint, containing a modified class definition.[2] On November 3, 1995, the court granted plaintiffs' motion to modify the class. In addition, the court ordered that the INS maintain the application system for only one more month. *See id.* at 14:10–11. Having ordered cross-motions for summary judgment, the court reasoned, "[T]he result of the wind-down should be that a determination on the merits will coincide with final determinations of class membership so that any remedial orders can be applied to a definable group of individuals." *See id.* at 17:17–20. With these modifications, the court granted temporary relief as previously ordered. *See id.* at 14:13–15. On February 23, 1996, defendant filed a notice of appeal.

While defendants' appeal was pending, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The Ninth Circuit Court of Appeal held that § 377 of IIRIRA stripped this court of jurisdiction over the named plaintiffs' claims. *See Catholic Social Services, Inc. v. Reno*, 134 F.3d 921 (9th Cir.1998). On remand, this court dismissed the plaintiff class without prejudice. *See* March 10, 1998 Order.

Plaintiffs filed a new action for the subset of *CSS I* class members to whom § 377 did not apply, i.e., those who had actually filed for legalization under IRCA. The court provisionally certified a class[3] in this new action, herein referred to as *CSS II*. That class was limited to those who had actually filed for legalization under IRCA *and* who had also timely filed for class membership under *Catholic Social Services, Inc. v. Reno*, CIV No. S–86–1343 LKK (E.D.Cal.), and were determined to be eligible for class membership. As to the new class, the court granted preliminary injunctive relief. The court also noted that as "a determination regarding class certification does not depend on the merits of the action, *see Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231–32 (9th Cir.1996), the determination to provisionally certify this limited class [was] without prejudice to the renewal of a motion to certify a modified class, such as a class relating to the bars to admissibility." July 2, 1998 Order at 40 n. 39.

The Ninth Circuit affirmed the court's determination that the plaintiffs could maintain a successive class action and found that the court did not err in granting the preliminary injunction. In addition, the Ninth Circuit held that the court could consider an equal protection challenge to § 377 of IIRIRA by those plaintiffs whose claims it effectively foreclosed. *Catholic Social Services v. INS*, 232 F.3d 1139 (2000).

On December 21, 2000, the Legal Immigration Family Equity Act ("LIFE" Act) was signed into law. The LIFE Act provided that eligible aliens be afforded a new applica-

---

**2.** The class was defined as follows: "All persons, otherwise eligible for legalization under IRCA, who, after November 6, 1986, depart or departed the United States for brief, innocent and casual absences without advance parole, and who (i) are therefore deemed ineligible for legalization, or (ii) were informed that they were ineligible for legalization, or were ineligible for legalization, or were refused by the INS or its QDEs legalization forms, and for whom such information, or inability to obtain the required application forms, was a substantial cause of their failure to timely file or complete a written application."

**3.** The class was defined as follows: "All persons who timely filed for class membership under *Catholic Social Services, Inc. v. Reno*, CIV No. S–86–1343 LKK (E.D.Cal.), and who were otherwise prima facie eligible for legalization under section 245A of the INA and who were thus granted class membership, and who tendered completed applications for legalization under section 245A of the INA and fees to an INS officer or agent acting on behalf of the INS, including a QDE, during the period from May 5, 1987 to May 4, 1988, and whose applications were rejected for filing because they had traveled outside the United States after November 6, 1986 without advance parole."

tion period in which to apply for legalization under section 245A of the INA, 8 U.S.C. § 1255a(2000). *See* LIFE Act § 1104. In addition, the LIFE Act repealed § 377's limitation on subject matter jurisdiction over claims by "eligible aliens," *nunc pro tunc.* An eligible alien is one who "before October 1, 2000 ... filed with the Attorney General a written claim for class membership, with or without a filing fee, pursuant to a court order issued in the case[ ] of [inter alia] ... *Catholic Social Services v. Meese, vacated sub nom. Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)." LIFE Act § 1104(b).

Given the extraordinary circumstance presented by the LIFE Act's repeal of § 377, the court considered reopening *CSS I* under Federal Rule of Civil Procedure 60(b). This court found that plaintiffs would suffer injury if the court did not reinstate *CSS I,* as there were certain differences between the relief available under the LIFE Act and that available to class members under IRCA, the statute they originally sought to enforce.[4] Accordingly, the court reinstated *CSS I* as to those class members who, before October 1, 2000, filed with the Attorney General a written claim for class membership. The court also consolidated *CSS I* with *CSS II,* and denied without prejudice plaintiffs' motion to amend, as it was not clear to the court whether or not plaintiffs maintained that individuals not covered by the LIFE Act were, nonetheless, able to pursue their claims in *CSS I.*

In the pretrial scheduling order entered September, 20, 2001, the court ordered the plaintiffs to bring a motion to amend their complaint and redefine the classes by October 31, 2001. The court also asked the plaintiffs to address whether there are persons presently within the class definition who are not protected by injunctive relief and, if so, to file a motion for injunctive relief as to those persons by October 31, 2001.

## II.

## STANDARDS FOR LEAVE TO AMEND UNDER RULE 15(a)

■ Federal Rule of Civil Procedure 15(a) provides that after responsively pleading, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Supreme Court has explained that motions to amend should be granted absent reasons

> such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc....

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Thus, "outright refusal to grant the leave without any justifying reason" is an abuse of discretion. *Id.*

■ The converse of the rule of free amendment, namely, that where reasons exist the motion should be denied, is equally true. Thus the Ninth Circuit has upheld denial of leave to amend where it found the proposed amendment to be "futile," i.e., vulnerable to summary judgment. *Gabrielson v. Montgomery Ward & Co.,* 785 F.2d 762, 765 (9th Cir.1985). The test for sufficiency "is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988). Accordingly, "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id.*

## III.

## ANALYSIS

Plaintiffs seek to amend their complaint to add class representatives who had not filed for class membership in *CSS I,* and propose that the class definition for this case consolidating *CSS I* and *CSS II* should be the

---

**4.** These differences were seen in (1) the continuous unlawful residence requirements; (2) the periods of continuous physical presence required; (3) the definitions of the exception for "brief, casual and innocent," absences; and (4) the "admissibility" standards regarding the financial responsibility of the applicants. See August 27, 2001 Order at 12–16.

definition from *CSS I*,[5] which does not limit the class to those who have filed for class membership. Plaintiffs also seek to add a claim to challenge § 377 of IIRIRA on Equal Protection grounds.

As to those plaintiffs who did not file for class membership during *CSS I*, plaintiffs acknowledge that they are not eligible for relief under the LIFE Act,[6] and that the jurisdictional bar created by § 377 of IIRI-RA applies to them. Nonetheless, under *Catholic Social Services v. INS*, 232 F.3d 1139 (2000), *CSS I* plaintiffs who failed to satisfy the criteria of § 377 may still bring an Equal Protection challenge against § 377. Thus, it is for this limited purpose that plaintiffs wish to add class representatives who did not file for class membership in *CSS I*, and to use the class definition from *CSS I* that encompasses such plaintiffs.

Defendant argues that the class in *CSS I* was limited to those who filed for class membership therein, and that any modified class definition should not encompass plaintiffs who did not file for class membership. By the same token, defendant argues that the addition of an Equal Protection challenge to § 377 of IIRIRA is unnecessary.

## A. THE SIGNIFICANCE OF CLASS MEMBERSHIP

As a preliminary matter, the court must resolve the parties' conflicting characterizations of the class membership determinations made in *CSS I*. Defendant argues that the class in *CSS I* was limited to those who applied for class membership. Plaintiffs argue that the class membership determinations in *CSS I* were made solely for the purpose of determining eligibility for interim relief in the form of stays of deportation,

release, and work authorization. Many class members who were otherwise eligible for final relief, plaintiffs contend, did not apply for class membership with the INS because they did not need a stay of deportation, release from detention, or employment authorization. After a painstaking review of the record in *CSS I*, I conclude that plaintiffs are correct.

The first time that the concept of class membership determination arose was in this court's June 24, 1988 Order. There, this court stayed its final relief order which would have extended the legalization application process for plaintiffs and, in the interim, stayed deportation of class members. The court provided that, in determining whether a person was a class member eligible for a stay of deportation, the INS could require that the person present prima facie evidence that he or she belonged to the *CSS I* class. Clearly, in the court's June 24, 1988 Order, class membership determinations were for the limited purpose of determining whether a person was eligible for a stay of deportation.

It is the provisions of this June 24, 1988 Order that became the basis for the Ninth Circuit's interim stay order, which remained in effect throughout the *CSS I* litigation. *See* Joint Application for Temporary Interim Stay Pending Disposition of Appellant's for Motion for Stay; September 20, 1988 Ninth Cir. Order. In the context of enforcing this interim stay order, in which the Ninth Circuit also provided for release from detention and work authorization for class members, the issue of class membership determinations again arose. In response to plaintiff's motion to enforce the Ninth Circuit's interim stay order the parties stipulated to an order providing for national "standards and proce-

---

**5.** "All persons, otherwise eligible for legalization under IRCA, who, after November 6, 1986, depart or departed the United States for brief, innocent and casual absences without advance parole, and who (i) are therefore deemed ineligible for legalization, or (ii) were informed that they were ineligible for legalization, or were ineligible for legalization, or were refused by the INS or its QDEs legalization forms, and for whom such information, or inability to obtain the required application forms, was a substantial cause of their failure to timely file or complete a written application."

**6.** As noted in the text, those eligible for the LIFE Act's repeal of IIRIRA's jurisdiction-stripping provision are aliens who, "before October 1, 2000 ... filed with the Attorney General a written claim for class membership, with or without a filing fee, pursuant to a court order issued in the case[ ] of [inter alia] ... *Catholic Social Services v. Meese, vacated sub nom. Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)."

dures for class member determinations." March 4, 1993 Stipulation and Order, attached *CSS* National Standards. Although the National Standards provided for in this stipulated order do refer to a class member application process, the class application process was clearly for the purpose of determining eligibility for stays of deportation, release from detention, and work authorization, as illustrated by the following provision:

> The INS will engage in a one-month outreach campaign ... advising CSS applicants that they may be reinterviewed under the standards set forth in this instruction. Individualized notices are being sent to approximately 58,000 applicants previously denied employment authorizations and stays of deportation.

March 4, 1993 Stipulation and Order, attached *CSS* National Standards at 1. There is no indication in the National Standards that the class member application process was relevant beyond the context of the Ninth Circuit's interim stay order. Indeed, defendant's characterization of the class member application process as a sort of opt-in mechanism raises due process problems,[7] as the stipulated order and attached National Standards provided for notice only to 58,000 people who had previously been denied employment authorization or stay of deportation, rather than to all potential class members.

■ Having established that the class application process was for the purpose of determining eligibility for stays of deportation, release from detention, and work authorization, defendants are nonetheless correct in noting that, as of November 3, 1995, this court had an expanded view of the usefulness of the class application process. Having ordered cross-motions for summary judgment, the court anticipated that the litigation was winding down and ordered the INS to continue accepting membership applications for only one more month. *See* November 3, 1995

Order at 14:10–11. "The result of the winddown," reasoned the court, "should be that a determination on the merits will coincide with final determinations of class membership so that any remedial orders can be applied to a definable group of individuals." November 3, 1995 Order at 17:17–20.

In light of the many years of litigation that followed the court's November 3, 1995 order, any attempt at determining specifically to whom remedial orders would apply at that time was clearly premature. Furthermore, as already noted, conflating the concept of class membership determinations, made for the purpose of interim relief, with the concept of class membership for purposes of final relief has serious due process implications. Thus, the court's expanded vision of the usefulness of the class member application process was ultimately problematic, and not one to which the court should adhere.

In so concluding, I note that no authority binds this court to its misapprehension of the class member application process. Although the court's mistaken view of the class member application process was articulated in the November 3, 1995 Order, the order itself does nothing more than provide for an end to defendant's obligation for accepting those applications. Nor does the fact that this court limited the provisional class in *CSS II* to those who had filed for membership under *CSS I*, require the court to continue repeating its mistake.[8] Finally, defendant is simply incorrect in concluding that, because the Ninth Circuit affirmed the *CSS II* provisional class certification which was limited to those who had applied for class membership in *CSS I*, this court cannot now allow for the addition of plaintiffs who did not file for class membership. The Ninth Circuit never addressed the fact that the provisional class in *CSS II* excluded those who had not filed a class membership application, and gave no

---

7. The idea of an opt-in mechanism is an odd one to begin with, as it runs contrary to the normal rule in class actions that a person who falls within the class definition is a member of the class unless they opt out under Fed.R.Civ.P. 23(b)(3) or had inadequate notice. Even if the court were to fashion on opt-in requirement, it would certainly have to provide such notice as would comport with due process. *Cf. Frank v.*

*United Airlines,* 216 F.3d 845, 851 (9th Cir.2000) (noting that there is no notice required in Rule 23(b)(2) class action, beyond that required by due process, because class members are not allowed to opt out).

8. The provisional certification was without prejudice. *See* July 2 1998 Order at 40 n. 39.

indication that the Court of Appeals had given any consideration at all to such exclusion, much less approved of it.

## B. MOTION TO AMEND AND REDEFINE THE CLASSES

Given the fact that there are *CSS I* class members who did not file class member applications because they did not seek interim relief, the *CSS II* provisional class definition limiting that class to those who filed a class member application in *CSS I* was inappropriate. As that class definition was certified without prejudice, the court may modify the class definition to dispose of that limitation.[9] Pursuant to *Catholic Social Services v. INS*, 232 F.3d 1139 (9th Cir.2000), this court may also modify the class definition to provide for a subclass of plaintiffs who have standing to challenge the jurisdiction stripping provisions of § 377 of IIRIRA on Equal Protection grounds.[10]

Thus, the modified *CSS* class definition should take into account the following groups of individuals:

(1) Those *CSS I* class members to whom the jurisdiction-stripping provisions of § 377 of IIRIRA did not apply, without regard to whether those class members submitted class membership applications for the purpose of interim relief.

(2) Those *CSS I* class members to whom the jurisdiction stripping provisions of § 377 of IIRIRA apply, but over whose claims the court has jurisdiction by virtue of the LIFE Act's *nunc pro tunc* repeal of IIRIRA's jurisdiction stripping provision, i.e., the *CSS I* class members who did not file a completed application for legalization under IRCA, but

who filed class membership applications during *CSS I*.

(3) Those *CSS I* class members to whom the jurisdiction stripping provisions of § 377 of IIRIRA apply, and for whom the LIFE Act did not restore jurisdiction because they did not file class membership applications during *CSS I*, but who, pursuant to *Catholic Social Services v. INS*, 232 F.3d 1139 (9th Cir.2000), may be class members for the limited purpose of challenging IIRIRA's jurisdiction-stripping provisions on Equal Protection grounds.

Clearly it is in the interest of justice for this court to modify the class definition to include the *CSS I* class members who, because they did not seek interim relief, did not file class member applications. Likewise, it is in the interest of justice to grant plaintiffs leave to amend to add an Equal Protection claim for the subclass of plaintiffs over whom the court otherwise lacks jurisdiction under IIRIRA, and to add named plaintiffs to represent them. Although defendant claims that it would be unduly prejudiced by such amendment, the prejudice to defendant is slight compared to the prejudice that would otherwise be suffered by affected class members, who would lose all hope of obtaining final relief from defendant's regulation just because they did not apply for interim relief in *CSS I*.

Accordingly, the court ORDERS as follows:

1. The court certifies the following class pursuant to Fed.R.Civ.P. 23(b)(2), comprised of the following subclasses:

(1) All persons who were otherwise prima facie eligible for legalization under sec-

---

9. Modified, the class action would not be barred by the statute of limitations for the same reason that the Ninth Circuit explained that the action brought by the provisionally certified class was not barred. In *Catholic Social Services v. INS*, 232 F.3d 1139 (9th Cir.2000), the Court of Appeals concluded that the *CSS I* class members had not slept on their rights and that the statute of limitations had been tolled during the previous class action. There is no indication that the Ninth Circuit's conclusion that *CSS I* class members did not sleep on their rights was limited to members who filed applications for interim relief or was in any way based on the fact that some *CSS I* class members filed applications for inter-

im relief. Rather, the court referred generally to *CSS I* plaintiffs who promptly filed a subsequent class action after *CSS I* was dismissed.

10. Although the passage of the LIFE Act renders moot any Equal Protection challenge that might have been brought by those who filed class membership applications in *CSS I*, those who did not file class membership applications in *CSS I* still have standing to bring an Equal Protection challenge because the LIFE Act's repeal of the jurisdiction-stripping provisions of section 377 of IIRIRA does not extend to them.

tion 245A of the INA, and who tendered completed applications for legalization under section 245A of the INA and fees to an INS officer or agent acting on behalf of the INS, including a QDE, during the period from May 5, 1987 to May 4, 1988, and whose applications were rejected for filing because they had traveled outside the United States after November 6, 1986 without advance parole.

(2) All persons who filed for class membership under *Catholic Social Services, Inc. v. Reno*, CIV No. S–86–1343 LKK (E.D.Cal.), and who were otherwise prima facie eligible for legalization under section 245A of the INA, who, because they had traveled outside the United States after November 6, 1986 without advance parole were informed that they were ineligible for legalization, or were ineligible for legalization, or were refused by the INS or its QDEs legalization forms, and for whom such information, or inability to obtain the required application forms, was a substantial cause of their failure to timely file or complete a written application.

(3) All persons who did not file an application for class membership in *Catholic Social Services, Inc. v. Reno*, CIV No. S–86–1343 LKK (E.D.Cal.), but who were otherwise prima facie eligible for legalization under section 245A of the INA, who, because they had traveled outside the United States after November 6, 1986 without advance parole were informed that they were ineligible for legalization, or were ineligible for legalization, or were refused by the INS or its QDEs legalization forms, and for whom such information, or inability to obtain the required application forms, was a substantial cause of their failure to timely file or complete a written application.

Subclass three (3) is certified for the limited purpose of challenging the jurisdiction-stripping provisions of § 377 of IIRIRA on Equal Protection grounds, unless and until that challenge is successful, at which time members of subclass three (3) may seek relief from the INS regulation challenged by subclasses one (1) and two (2).

2. Plaintiff's motion to amend is GRANTED. The Clerk is directed to FILE plaintiffs' proposed eighth amended complaint lodged with the court on January 23, 2002.